UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No: 14-1021 |
| | ) | |
| v. | ) | |
| | ) | FIRST AMENDED COMPLAINT FOR |
| JEWELL, *et al*., | ) | DECLARATORY AND INJUNCTIVE |
| | ) | RELIEF |
| Defendants. | ) | |
| | ) | |

INTRODUCTION

1. Plaintiff Center for Biological Diversity ("Center") brings this action under the Endangered Species Act, 16 U.S.C. §§ 1531-1544 ("ESA"), to challenge the failure of the Secretary of the Interior ("Secretary") and the U.S. Fish and Wildlife Service ("FWS") (collectively, "Defendants" or "FWS") to make statutorily-required findings on whether to list nine species as endangered or threatened under the ESA. 16 U.S.C. § 1533(b)(3)(B). These species are experiencing steep population declines and myriad threats to their existence. They are: the Ichetucknee siltsnail (*Floridobia mica*); the San Bernardino flying squirrel (*Glaucomys sabrinas californicus*); a distinct population of the black-backed woodpecker (*Picoides arcticus*) that occurs in California and Oregon; a distinct population of the black-backed woodpecker that occurs in South Dakota; the Kirtland's snake (*Clonophis kirtlandii*); the Atlantic pigtoe (*Fusconaia masoni*); the slenderclaw crayfish (*Cambrus cracens*); the Barrens darter (*Etheostoma forbesi*); and the holiday darter (*Etheostoma brevirostrum*).

2. To obtain federal safeguards and habitat protections, the Center submitted petitions to list these nine species as endangered or threatened pursuant to the ESA. FWS issued "90-day findings" in response to the Center's petitions which concluded that the petitions

presented substantial information indicating that listing each of these species "may be warranted." 16 U.S.C. § 1533(b)(3)(A); *see also* 76 Fed. Reg. 59,836 (Sep. 27, 2011) (Ichetucknee siltsnail, Kirtland's snake, Atlantic pigtoe, slenderclaw crayfish, Barrens darter, holiday darter); 77 Fed. Reg. 4,973 (Feb. 1, 2012) (San Bernardino flying squirrel); 78 Fed. Reg. 21,086 (April 9, 2013) (California-Oregon and South Dakota black-backed woodpecker populations). To date, however, FWS has failed to make the mandatory "12-month findings" as to whether the listing of these species is "warranted." 16 U.S.C. § 1533(b)(3)(B). Defendants are therefore in violation of the ESA.

3. By this action, the Center seeks declaratory and injunctive relief to enforce the ESA's mandatory deadline requiring Defendants to make 12-month findings in response to the Center's petitions to list the Ichetucknee siltsnail, San Bernardino flying squirrel, black-backed woodpecker populations, Kirtland's snake, Atlantic pigtoe, slenderclaw crayfish, Barrens darter, and holiday darter. With these findings, Defendants must determine whether listing these species as endangered or threatened is warranted.

## JURISDICTION

4. The Court has jurisdiction over this action pursuant to 16 U.S.C. §§ 1540(c), (g)(1)(C) (action arising under the ESA's citizen suit provision), 5 U.S.C. § 702 (review of agency action under the Administrative Procedure Act ("APA")), and 28 U.S.C. § 1331 (federal question jurisdiction).

5. The Court may grant the relief requested under the ESA, 16 U.S.C. § 1540(g); the APA, 5 U.S.C. §§ 701-706; and 28 U.S.C. §§ 2201 and 2202 (declaratory and injunctive relief).

6. The Center provided 60 days notice of its intent to file this suit as is required by the citizen suit provision of the ESA. 16 U.S.C. § 1540(g)(2)(C). Notice was provided to

Defendants by letters dated: May 22, 2012 (Kirtland's snake); June 18, 2012 (Ichetucknee siltsnail); March 14, 2013 (Atlantic pigtoe, Barrens darter, holiday darter); April 2, 2014 (black-backed woodpecker); April 3, 2014 (San Bernardino flying squirrel); and April 7, 2014 (slenderclaw crayfish). Defendants have not responded to these notices of the Center's intent to sue nor have the Defendants remedied the alleged violations. Therefore, an actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

VENUE

7. The United States District Court for the District of Columbia is the proper venue for this action pursuant to 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e). The Department of the Interior and FWS headquarters are located within this district, and a substantial part of the events giving rise to the Center's claim occurred in this district.

PARTIES

8. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit corporation that is incorporated in California and headquartered in Tucson, Arizona, with field offices throughout the United States, including Arizona, New Mexico, California, Nevada, Oregon, Washington, Alaska, Minnesota, Vermont, Florida, and Washington, D.C. The Center works through science, law, and creative media to secure a future for all species, great or small, hovering on the brink of extinction. The Center has over 50,000 members and more than 700,000 online supporters. The Center and its members are concerned with the conservation of imperiled species, including the Ichetucknee siltsnail, San Bernardino flying squirrel, black-backed woodpecker, Kirtland's snake, Atlantic pigtoe, slenderclaw crayfish, Barrens darter, and holiday darter.

9. The Center has members who visit areas where the Ichetucknee siltsnail, San

Bernardino flying squirrel, black-backed woodpecker, Atlantic pigtoe, slenderclaw crayfish, Barrens darter, and holiday darter are still known to occur. The Center's members use these areas for observation of these species and other wildlife, for research, nature photography, aesthetic enjoyment, recreational, educational, and other activities. The Center's members derive professional, spiritual, and economic benefits from these species and their habitats. Those members have concrete plans to continue to travel to and recreate in areas where they can observe these species and will continue to maintain an interest in these species and their habitats in the future.

10. In addition to submitting petitions to list these nine species under the ESA, the Center and its members have participated in conservation efforts. For example, the Center has campaigns to protect biodiversity in the Southeastern United States, to protect amphibians and reptiles, and to fight global warming. These campaigns would help the species at issue in this case.

11. The Center's conservation efforts are prompted by the concern that the Ichetucknee siltsnail, San Bernardino flying squirrel, black-backed woodpecker, Kirtland's snake, Atlantic pigtoe, slenderclaw crayfish, Barrens darter, and holiday darter are at serious risk of extinction. Defendants' failure to comply with the ESA's non-discretionary deadline for issuing 12-month findings on these species deprives them of statutory protections that are vitally necessary to their survival and recovery. Until these species are protected under the ESA, the Center's interest in their conservation and recovery is impaired. Therefore, the Center's members and staff are injured by the FWS's failure to make a timely determination as to whether listing these species is warranted, as well as by the ongoing harm to the species and their habitats in the absence of such protections. The injuries described above are actual, concrete injuries

presently suffered by the Center and its members and they will continue to occur unless this Court grants relief. These injuries are directly caused by Defendants' inaction. The relief sought herein – an order compelling listing decisions for these species – would redress these injuries. The Center and its members have no other adequate remedy at law.

12. Defendant SALLY JEWELL is the Secretary of the Interior and is the federal official in whom the ESA vests final responsibility for making decisions and promulgating regulations required by and in accordance with the ESA, including listing and critical habitat decisions. Secretary Jewell is sued in her official capacity.

13. Defendant UNITED STATES FISH AND WILDLIFE SERVICE is the agency within the Department of the Interior that is charged with implementing the ESA for most terrestrial species as well as ensuring prompt compliance with the ESA's mandatory listing deadlines.

## LEGAL BACKGROUND

14. The ESA is a comprehensive federal statute which declares that endangered and threatened species are of "esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people." 16 U.S.C. § 1531(a)(3). Accordingly, the purpose of the ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species. . . ." *Id*. § 1531(b). To this end, ESA section 4 requires that the Secretary protect imperiled species by listing them as either "endangered" or "threatened." *Id*. § 1533(a). A "species" includes "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id*. § 1532(16).

15. The ESA imposes conservation measures that apply only after the Secretary lists a species as threatened or endangered. For example, section 7 of the ESA requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any listed species or "result in the destruction or adverse modification" of a species' "critical habitat." *Id.* § 1536(a)(2). Section 9 of the ESA prohibits, among other things, "any person" from intentionally taking listed species or incidentally taking listed species without a lawful authorization from the Secretary. *Id.* §§ 1538(a)(1)(B) and 1539. Concurrently with listing, the Secretary must designate the species' critical habitat, which includes areas that are essential to the conservation of the species. *Id.* §§ 1532(5)(A) and 1533(a)(3)(A). Other provisions of the ESA require the Secretary to "develop and implement" recovery plans for listed species, authorize the Secretary to acquire land for the protection of listed species, and make federal funds available to states to assist in their efforts to preserve and protect listed species. *Id.* § 1533(f), § 1534, and § 1535(d).

16. To ensure the timely protection of species that are at risk of extinction, Congress set forth a detailed process whereby citizens may petition the Secretary to list a species as endangered or threatened. The process includes mandatory, non-discretionary deadlines that the Secretary must meet so that imperiled species receive the ESA's substantive protections in a timely fashion. The three required findings, described below, are the 90-day finding, the 12-month finding, and the final listing determination. The Secretary has delegated responsibility for making these findings to FWS.

17. Upon receiving a listing petition, FWS must "to the maximum extent practicable, within 90-days" make an initial finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). If FWS finds that the petition does not present substantial information indicating

that listing may be warranted, the petition is rejected and the process ends.

18. If, however, FWS determines that a petition does present substantial information indicating that listing may be warranted, then the agency must conduct a full scientific review of the species' status. *Id*. Upon completion of this status review, and within 12-months from the date that it receives the petition, FWS must make one of three findings: (1) listing is "not warranted"; (2) listing is "warranted"; or (3) listing is "warranted but precluded" by other pending proposals for listing species, provided certain circumstances are present. *Id.* § 1533(b)(3)(B).

19. If FWS's 12-month finding concludes that listing is warranted, the agency must publish notice of the proposed regulation to list the species as endangered or threatened in the Federal Register for public comment. *Id.* § 1533(b)(3)(B)(ii). Within one year of publication of the proposed regulation, the ESA requires FWS to render its final determination on the proposal. *Id.* § 1533(b)(6)(A). At such time, FWS must either list the species, withdraw the proposed listing rule, or, if there is substantial disagreement about scientific data, delay a final determination for up to six months in order to solicit more scientific information. *Id.* §§ 1533(b)(6)(A)(i) and 1533(b)(6)(B)(i).

20. Because the ESA does not safeguard a species facing extinction until it is formally listed as endangered or threatened, it is critical that FWS meticulously follow the ESA's listing procedures and deadlines so that such species are protected in a timely manner. Defendants have regularly ignored these statutory procedures and have missed statutory listing deadlines, leading to litigation to correct these deficiencies.

21. On July 12, 2011, the Center and Defendants entered into a comprehensive stipulated settlement agreement that defines Defendants' responsibilities regarding future ESA

statutory deadline litigation between these parties.

22. Under the settlement, the Center may file deadline suits addressing up to 10 species, and to obtain remedies from up to three deadline suits, in each fiscal year from 2012 through 2016. If the Center files suits addressing more than 10 species, or obtains remedies from more than three suits in any one of these fiscal years, negotiated deadlines that Defendants must meet under the agreement may be pushed back to 2016. Under the settlement, a "remedy" means a stipulated settlement agreement or judicially-enforceable order requiring the FWS to make any finding, listing determination, or critical habitat determination for a species before April 1, 2017. The instant complaint is a "deadline suit" as defined in the parties' settlement.

23. During the current fiscal year, the Center has filed a deadline suit for a tenth species via a separate complaint that has been assigned to this Court. *Ctr. for Biological Diversity et al. v. Jewell et al.*, Civ. No. 14-991 (D.D.C.) (EGS).

## FACTUAL BACKGROUND

### A. Ichetucknee Siltsnail

24. The Ichetucknee siltsnail is a small freshwater snail. The snail's range consists of just 10 square yards located in the Ichetucknee Springs State Park in Florida, in a spring-fed pool that is only 40 feet wide, along the Ichetucknee River. This is the only population of the Ichetucknee siltsnail. The total population size is unknown.

25. The snail is in danger because of threats to its limited habitat. Pollution and low water levels, primarily from runoff and over-pumping, have seriously degraded the quality of the snail's pool and the Ichetucknee River which feeds it. NatureServe, a non-profit provider of scientific information to support conservation, classifies the species as critically imperiled. The International Union for the Conservation of Nature ("IUCN"), which studies and identifies

species at risk of extinction, considers it to be vulnerable.

26. Based on these threats to the Ichetucknee siltsnail, on April 20, 2010 the Center submitted a petition to FWS to list the snail as endangered or threatened under the ESA.

27. On September 27, 2011, FWS issued a 90-day finding on the Center's petition to list the Ichetucknee siltsnail. The finding concluded that the Center's petition presented substantial scientific or commercial information indicating that listing the Ichetucknee siltsnail may be warranted. 76 Fed. Reg. 59,836 (Sep. 27, 2011).

28. To date, more than 12 months after receiving the Center's petition, FWS has failed to issue the required 12-month finding as to whether listing the Ichetucknee siltsnail is warranted.

B. San Bernardino Flying Squirrel

29. The San Bernardino flying squirrel is a small squirrel that lives and glides through mixed-conifer forests that are between 4000 and 8500 feet in elevation. A subspecies of the northern flying squirrel, the San Bernardino flying squirrel's historic range was the San Bernardino and San Jacinto Mountains of southern California. Over the last hundred years, however, there have been no verifiable sightings of the species in the San Jacinto Mountains. The animal is active year-round, is primarily nocturnal, and occurs in mature forests with large trees and snags, closed canopy, downed woody debris, and riparian areas.

30. Primary threats to the San Bernardino flying squirrel include climate change, forest fuel-reduction programs, urban air pollution, and human development. Rising temperatures, changes in precipitation, and increased drought contribute to a loss of the mixed-conifer, black-oak forest habitat on which the species relies. As these changes occur, the squirrel is forced to retreat ever higher in elevation, eventually running out of habitat to occupy. In

addition, forest fuel-reduction practices in the San Bernardino Mountains have removed or damaged important components of flying squirrel habitat. Air pollution from nearby urban areas is altering the diversity and availability of fungi and lichen that the San Bernardino flying squirrel relies on for food. Finally, the expansion of human development results in the capture of individuals considered "nuisances," predation by domestic cats, and exacerbates the other threats to the species by requiring increased forest fuel-reduction activity and causing more air pollution.

31. Based on these threats to the San Bernardino flying squirrel, on August 24, 2010 the Center submitted a petition to FWS to list the species as endangered or threatened under the ESA.

32. On February 1, 2012, FWS issued a 90-day finding on the Center's petition to list the San Bernardino flying squirrel. The finding concluded that the Center's petition presented substantial scientific or commercial information indicating that listing the San Bernardino flying squirrel may be warranted. 77 Fed. Reg. 4,973 (Feb. 1, 2012).

33. To date, more than 12 months after receiving the Center's petition, FWS has failed to issue the required 12-month finding as to whether listing the San Bernardino flying squirrel is warranted.

C. California-Oregon and South Dakota Populations of the Black-Backed Woodpecker

34. The black-backed woodpecker is a small- to medium-sized bird which prefers to forage for insect larvae upon large snags and the charred bark of burned trees. Black-backed woodpeckers tend to rely on forested areas that have been affected recently by fire, where beetle larvae – a primary food source – can be found. The species ranges from western Alaska to northern California, and from the Cascade Range to the Great Lakes. The species is rare, however, throughout its range. A California-Oregon population occurs primarily on the eastern

side of the Oregon Cascades and Sierra Mountains. A South Dakota population is found in the Black Hills area of southwestern South Dakota and northwestern Wyoming. The population of the South Dakota is thought to be as small as about 1,200 individuals.

35. The California-Oregon and South Dakota populations of the black-backed woodpecker are threatened by extensive human impacts to habitat within the bird's range. Forest management activities like fire suppression, post-fire salvage, and tree and brush thinning to reduce fire risk or beetle-induced tree mortality shrink and degrade the birds' habitat. A long history of intensive logging has eliminated important habitat for both population segments. In the Black Hills, for example, nearly every acre of the South Dakota population's range has been logged at least twice since the 1800s. Additional threats include predation from parasites and other birds.

36. Based on these threats to the California-Oregon and South Dakota populations of the black-backed woodpecker, on May 02, 2012 the Center submitted a petition to FWS to list the populations as endangered or threatened "distinct population segments" ("DPS") under the ESA. 16 U.S.C. § 1532(16) (defining "species" to mean "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature").

37. On April 9, 2013, FWS issued a 90-day finding on the Center's petition to list the black-backed woodpecker California-Oregon and South Dakota DPSs of the black-backed woodpecker. The finding concluded that the Center's petition presented substantial scientific or commercial information indicating that listing the black-backed woodpecker DPSs may be warranted. 78 Fed. Reg. 21,086 (Apr. 9, 2013).

38. To date, more than 12 months after receiving the Center's petition, FWS has

failed to issue the required 12-month finding as to whether listing the California-Oregon and South Dakota black-backed woodpecker DPSs is warranted.

D. Kirtland's Snake

39. The Kirtland's snake is a small, nonvenomous snake that prefers meadow wetlands, open and wooded wetlands, seasonal marshes, open swamps, and other similar habitat. Although its historic range included more than 100 counties in eight states, the snake is now known to survive in only about 25 counties in Illinois, Indiana, Michigan, Missouri, Ohio, and Kentucky. The species' entire population size may be as few as about 1,000 individuals. This represents a population decline of up to 90 percent in recent decades.

40. Primary threats to the Kirtland's snake include habitat destruction and over-collection. Agricultural development and suburban sprawl have destroyed large portions of the snake's habitat, leaving remaining areas isolated and small. In addition, over-collection for sale in the pet trade poses another serious threat to the Kirtland's snake. Together, these pressures present a serious threat to the snake's existence. NatureServe lists the species as critically imperiled in Michigan and Missouri, imperiled in Illinois, Indiana, Kentucky, and Ohio, and extirpated from Pennsylvania.

41. Based on these threats to the Kirtland's snake, on April 20, 2010 the Center submitted a petition to FWS to list the species as endangered or threatened under the ESA.

42. On September 27, 2011, FWS issued a 90-day finding on the Center's petition to list the Kirtland's snake. The finding concluded that the Center's petition presented substantial scientific or commercial information indicating that listing the Kirtland's snake may be warranted. 76 Fed. Reg. 59,836 (Sep. 27, 2011).

43. To date, more than 12 months after receiving the Center's petition, FWS has

failed to issue the required 12-month finding as to whether listing the Kirtland's snake is warranted.

E. Atlantic Pigtoe

44. The Atlantic pigtoe is a species of mussel that depends on clean, fast-flowing water with high levels of dissolved oxygen. Once common from Georgia's Ogeechee drainage north to the James River drainage in Virginia, the Atlantic pigtoe now only occurs in fewer than 20 populations within its historic range. In Georgia and South Carolina, the species is considered to be extirpated or nonviable.

45. Because the Atlantic pigtoe requires high-quality aquatic habitat, declines in water quality have resulted in the extirpation of a majority of pigtoe populations in large river mainstreams. Consequently, where it still exists, the mussel is limited to headwater areas. Pollution, siltation, altered flow regimes, and euthrophication continue to reduce the Atlantic pigtoe's habitat. NatureServe ranks the mussel as critically imperiled in Georgia and North Carolina, and imperiled in Virginia. The IUCN ranks the species as endangered.

46. Based on these threats to the Atlantic pigtoe, on April 20, 2010 the Center submitted a petition to FWS to list the species as endangered or threatened under the ESA.

47. On September 27, 2011, FWS issued a 90-day finding on the Center's petition to list the Atlantic pigtoe. The finding concluded that the Center's petition presented substantial scientific or commercial information indicating that listing the Atlantic pigtoe may be warranted. 76 Fed. Reg. 59,836 (Sep. 27, 2011).

48. To date, more than 12 months after receiving the Center's petition, FWS has failed to issue the required 12-month finding as to whether listing the Atlantic pigtoe is warranted.

F. Slenderclaw Crayfish

49. The slenderclaw crayfish occurs in clear, sluggish, and shallow streams flowing over bedrock and sand. Historically found at seven sites in Alabama, the species has been recently detected at only one of them. The reduction in known sites coincides with a decline in the crayfish's population of more than 80 percent.

50. A primary threat to the slenderclaw crayfish is the impact of hydropower operations and impoundment. NatureServe lists the slenderclaw crayfish as critically imperiled, while the State of Alabama categorizes the species as a "Priority 2 Species of Greatest Conservation Need."

51. Based on threats to the slenderclaw crayfish, on April 20, 2010 the Center submitted a petition to FWS to list the species as endangered or threatened under the ESA.

52. On September 27, 2011, FWS issued a 90-day finding on the Center's petition to list the slenderclaw crayfish. The finding concluded that the Center's petition presented substantial scientific or commercial information indicating that listing the slenderclaw crayfish may be warranted. 76 Fed. Reg. 59,836 (Sep. 27, 2011).

53. To date, more than 12 months after receiving the Center's petition, FWS has failed to issue the required 12-month finding as to whether listing the slenderclaw crayfish is warranted.

G. Barrens Darter

54. The Barrens darter is a freshwater fish that is limited to a handful of tributaries of the Barren Fork and lower Collins River in Tennessee. The fish prefers pools and gently flowing portions of small streams. The species is likely one of the rarest freshwater fishes in North America, and the long-term trend has seen a decline in occupied sites.

55. Threats to the Barrens darter include pollution and heavy silt loads from livestock grazing, agricultural activities, and water withdrawal. The fish's restricted range exacerbates the impacts from these activities. NatureServe considers the Barrens darter to be critically imperiled.

56. Based on threats to the Barrens darter, on April 20, 2010 the Center submitted a petition to FWS to list the species as endangered or threatened under the ESA.

57. On September 27, 2011, FWS issued a 90-day finding on the Center's petition to list the Barrens darter. The finding concluded that the Center's petition presented substantial scientific or commercial information indicating that listing the Barrens darter may be warranted. 76 Fed. Reg. 59,836 (Sep. 27, 2011).

58. To date, more than 12 months after receiving the Center's petition, FWS has failed to issue the required 12-month finding as to whether listing the Barrens darter is warranted.

H. Holiday Darter

59. The holiday darter is small fish that occurs in as many as five distinct forms. All of these forms are endemic to the upper Coosa River system in Georgia, Alabama, and southeastern Tennessee. The species occurs in small creeks to moderate sized rivers with cool, clear waters and lush growths of river weed. The various forms of the fish may qualify as distinct population segments under the ESA, as many populations are in decline. Even where the population is stable, the holiday darter is considered to be uncommon and has disappeared from some areas where it was once found.

60. The primary threat to the holiday darter is habitat destruction resulting from logging, road building, impoundments, and activities that remove riparian cover. These actions

contribute to pollution such as sediment runoff and excess silt. NatureServe lists the holiday darter as critically imperiled in Alabama and Tennessee and imperiled in Georgia. Georgia's Department of Natural Resources considers the species to be endangered in that state.

61. Based on these threats, on April 20, 2010 the Center submitted a petition to FWS to list the species as endangered or threatened under the ESA.

62. On September 27, 2011, FWS issued a 90-day finding on the Center's petition to list the holiday darter. The finding concluded that the Center's petition presented substantial scientific or commercial information indicating that listing the holiday darter may be warranted. 76 Fed. Reg. 59,836 (Sep. 27, 2011).

63. To date, more than 12 months after receiving the Center's petition, FWS has failed to issue the required 12-month finding as to whether listing the holiday darter is warranted.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Violation of the ESA: Failure to Make a Timely 12-Month Finding for the Ichetucknee Siltsnail

64. Plaintiff hereby incorporates all preceding paragraphs.

65. FWS's failure to make a timely 12-month finding on the Center's petition to list the Ichetucknee siltsnail as an endangered or threatened species violates the ESA, 16 U.S.C. § 1533(b)(3)(B), and constitutes agency action that has been "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1).

### SECOND CLAIM FOR RELIEF
### Violation of the ESA: Failure to Make a Timely 12-Month Finding for the San Bernardino Flying Squirrel

66. Plaintiff hereby incorporates all preceding paragraphs.

67. FWS's failure to make a timely 12-month finding on the Center's petition to list

the San Bernardino flying squirrel as an endangered or threatened species violates the ESA, 16 U.S.C. § 1533(b)(3)(B), and constitutes agency action that has been "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1).

## THIRD CLAIM FOR RELIEF
## Violation of the ESA: Failure to Make a Timely 12-Month Finding for the California-Oregon Black-Backed Woodpecker DPS

68. Plaintiff hereby incorporates all preceding paragraphs.

69. FWS's failure to make a timely 12-month finding on the Center's petition to list the California-Oregon black-backed woodpecker DPS as an endangered or threatened species violates the ESA, 16 U.S.C. § 1533(b)(3)(B), and constitutes agency action that has been "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1).

## FOURTH CLAIM FOR RELIEF
## Violation of the ESA: Failure to Make a Timely 12-Month Finding for the South Dakota Black-Backed Woodpecker DPS

70. Plaintiff hereby incorporates all preceding paragraphs.

71. FWS's failure to make a timely 12-month finding on the Center's petition to list the South Dakota black-backed woodpecker DPS as an endangered or threatened species violates the ESA, 16 U.S.C. § 1533(b)(3)(B), and constitutes agency action that has been "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1).

## FIFTH CLAIM FOR RELIEF
## Violation of the ESA: Failure to Make a Timely 12-Month Finding for the Kirtland's Snake

72. Plaintiff hereby incorporates all preceding paragraphs.

73. FWS's failure to make a timely 12-month finding on the Center's petition to list the Kirtland's snake as an endangered or threatened species violates the ESA, 16 U.S.C. §

1533(b)(3)(B), and constitutes agency action that has been "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1).

SIXTH CLAIM FOR RELIEF
Violation of the ESA: Failure to Make a Timely 12-Month Finding
for the Atlantic Pigtoe

74. Plaintiff hereby incorporates all preceding paragraphs.

75. FWS's failure to make a timely 12-month finding on the Center's petition to list the Atlantic pigtoe as an endangered or threatened species violates the ESA, 16 U.S.C. § 1533(b)(3)(B), and constitutes agency action that has been "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1).

SEVENTH CLAIM FOR RELIEF
Violation of the ESA: Failure to Make a Timely 12-Month Finding
for the Slenderclaw Crayfish

76. Plaintiff hereby incorporates all preceding paragraphs.

77. FWS's failure to make a timely 12-month finding on the Center's petition to list the slenderclaw crayfish as an endangered or threatened species violates the ESA, 16 U.S.C. § 1533(b)(3)(B), and constitutes agency action that has been "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1).

EIGHTH CLAIM FOR RELIEF
Violation of the ESA: Failure to Make a Timely 12-Month Finding
for the Barrens Darter

78. Plaintiff hereby incorporates all preceding paragraphs.

79. FWS's failure to make a timely 12-month finding on the Center's petition to list the Barrens darter as an endangered or threatened species violates the ESA, 16 U.S.C. § 1533(b)(3)(B), and constitutes agency action that has been "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1).

NINTH CLAIM FOR RELIEF
Violation of the ESA: Failure to Make a Timely 12-Month Finding
for the Holiday Darter

80. Plaintiff hereby incorporates all preceding paragraphs.

81. FWS's failure to make a timely 12-month finding on the Center's petition to list the holiday darter as an endangered or threatened species violates the ESA, 16 U.S.C. § 1533(b)(3)(B), and constitutes agency action that has been "unlawfully withheld or unreasonably delayed" within the meaning of the APA. 5 U.S.C. § 706(1).

REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court enter Judgment for Plaintiff providing the following relief:

A. Declare that Defendants violated the ESA and APA by failing to issue timely 12-month findings as to whether listing the Ichetucknee siltsnail, San Bernardino flying squirrel, black-backed woodpecker DPSs, Kirtland's snake, Atlantic pigtoe, slenderclaw crayfish, Barrens darter, and holiday darter is warranted;

B. Order Defendants to issue, by reasonable dates certain, findings as to whether listing the Ichetucknee siltsnail, San Bernardino flying squirrel, black-backed woodpecker DPSs, Kirtland's snake, Atlantic pigtoe, slenderclaw crayfish, Barrens darter, and holiday darter is warranted, 16 U.S.C. § 1533(b)(3)(B);

C. Grant Plaintiff its attorneys' fees and costs in this action as provided by the ESA, 16 U.S.C. § 1540(g)(4), or the Equal Access to Justice Act, 28 U.S.C. § 2412; and

D. Provide such other relief as the Court deems just and proper.

Dated: June 17, 2014

Respectfully submitted,

*/s/ Amy R. Atwood*

Amy R. Atwood, DC Bar No. 470258
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
Telephone: (971) 717-6401
Facsimile: (503) 283-5528
Email: atwood@biologicaldiversity.org

*Attorney for Plaintiff*